**FILED**

Feb 07 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      s/ anthonyh      DEPUTY



# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

WALDO BURROLA, an individual,

                                    Plaintiff,

v.

U.S. SECURITY ASSOCIATES, INC.,
and DOES 1 to 100, inclusive,

                                    Defendants.

Case No.:  3:18-cv-00595-BEN-JLB

**ORDER:**

**(1) GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT [Doc. No. 8];**

**(2) GRANTS IN PART DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY CASE [Doc. No. 3]; and**

**(3) DENYING PLAINTIFF'S MOTION TO REMAND ALL CAUSES OF ACTION IN PLAINTIFF'S COMPLAINT [Doc. No. 6].**

Pending before the Court is Plaintiff Waldo Burrola's ("Plaintiff" or "Burrola") Motion for Leave to File a First Amended Complaint ("FAC"), Defendant U.S. Security Associates, Inc.'s ("Defendant" and "U.S. Security") Motion to Compel Plaintiff to submit

his claims to arbitration on an individual basis, and Plaintiff's Motion to Remand All Causes of Action Complaint/FAC. The Court decides these matters on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS** Burrola's Motion for Leave to File a FAC, **GRANTS** U.S. Security's Motion to Compel Arbitration, and **DENIES** Burrola's Motion to Remand.

## I. BACKGROUND

U.S. Security is in the business of providing security guards and officer solutions to its business-clients, including those business-clients who operate and do business across state lines. (Doc. No. 3 at 9.) Burrola was a security guard for U.S. Security, beginning in or about November 2016, in California. (Doc. No. 3 at 5.) As a condition of employment, Burrola signed a "Dispute Resolution Agreement" requiring arbitration of any claims between Burrola and U.S. Security. ("Agreement" [Doc. No. 3-2 Ex. A].)

On February 2, 2018, Burrola filed a Complaint in the San Diego Superior Court[1], against U.S. Security for damages and restitution, alleging thirteen causes of action stemming from violations of California and federal labor laws[2]. (*See* Doc. No. 1.) U.S. Security removed the action to this Court on March 21, 2018. *Id.* Burrola now seeks leave to file its FAC and to remand this matter back to the San Diego Superior Court. (Doc. Nos.

---

[1] On February 2, 2018, Burrola commenced a civil action in the Superior Court of the State of California for the County of San Diego by filing a Complaint for Damages and Demand for Jury Trial entitled "Waldo Burrola, an individual, vs. U.S. Security Associates, Inc., and Does 1 to 100, inclusive, Case No. 37-2018-00006081-CU-OE-CTL. (*See* Doc. No. 1-2].)

[2] Burrola alleges claims for: 1) failure to provide meal periods; 2) failure to provide rest periods; 3) failure to pay overtime; 4) failure to pay minimum wages; 5) failure to timely pay wages during employment; 6) failure to pay all wages upon discharge; 7) failure to furnish accurate wage statements; 8) failure to maintain records; 9) failure to reimburse business expenses; 10) unfair business practices; 11) retaliation; 12) negligent infliction of emotional distress; 13) intentional infliction of emotional distress. (*See* Doc. No. 3 at 4, n.1.)

1  6 and 8.)  U.S. Security moves to compel Burrola to submit his claims to arbitration.  (*See*

2  Mot. [Doc. No. 3].)

3  **II. LEGAL STANDARD**

4       **A.     Leave to Amend**

5       Rule 15(a) of the Federal Rules of Civil Procedure governs motions for leave to

6  amend and provides that "[t]he court should freely give leave when justice so requires."

7  Fed. R. Civ. P. 15(a)(2).  The decision whether to grant leave to amend under Rule 15(a)

8  is committed to the sound discretion of the trial court.  *Waits v. Weller*, 653 F.2d 1288,

9  1290 (9th Cir. 1981).  Leave need not be granted, however, where the amendment would

10 cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in

11 futility, or creates undue delay.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Absent

12 prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a

13 presumption under Rule 15(a) in favor of granting leave to amend."  *Eminence Capital*

14 *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

15      **B.     Federal Arbitration Act**

16      There is no dispute as to the fact that the Federal Arbitration Act ("FAA") governs

17 here.  Under the FAA, a Court need consider only two questions to determine whether to

18 compel arbitration: (1) is there a valid agreement to arbitrate?  And, if so, (2) does the

19 agreement cover the matter in dispute? *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

20 F.3d 1126, 1130 (9th Cir. 2000).  The Agreement clearly covers the matters in dispute here.

21 Accordingly, the Court need only consider whether the Agreement is valid.

22      Section 2 of the Federal Arbitration Act ("FAA") states that:

23           A written provision in any ... contract evidencing a transaction
             involving commerce to settle by arbitration a controversy thereafter
24           arising out of such contract or transaction ... shall be valid,
             irrevocable, and enforceable, save upon such grounds as exist at law
25           or in equity for the revocation of any contract.

26

27

28

9 U.S.C. § 2. Section 2 codifies "'a national policy favoring arbitration of claims that parties contract to settle in that manner." *Preston v. Ferrer*, 552 U.S. 346, 352-53 (2008) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).

Section 3 of the FAA states where an issue involved in a suit or proceeding is referable to arbitration under an agreement in writing, the district court "shall on application of one of the parties' stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement ...." 9 U.S.C. § 3. The language is mandatory, and district courts are required to order arbitration on issues as to which an arbitration agreement has been signed. *Chiron Corp.* 207 F.3d at 1130.

Under California law, the elements of a valid contract are (1) parties capable of contracting; (2) mutual consent; (3) a lawful object; and (4) consideration. Cal. Civ. Code § 1550. However, a court will not enforce an otherwise valid contract if there exists a viable defense, such as illegality.[3] 1 Witkin, Summary 10th (2005) Contracts, § 331, p. 365.

## C. <u>Remand</u>

A defendant in state court may remove a civil action to federal court so long as that case could originally have been filed in federal court. 28 U.S.C. § 1441(a); *City of Chi. v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 163 (1997). Thus, removal of a state action may be based on either diversity or federal question jurisdiction. *City of Chi.*, 522 U.S. at 163; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Removal jurisdiction is based entirely on federal statutory authority. *See* 28 U.S.C. § 1441 *et seq.* These removal statutes are strictly construed, and removal jurisdiction is to be rejected in favor of remand to the state court if there are doubts as to the right of removal. *Nev. v. Bank of Am. Corp.*, 672

---

[3]    In California, the party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement, while a party opposing arbitration bears the burden of proving any fact necessary to its defense. *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 842 (2014).

F.3d 661, 667 (9th Cir. 2012). The defendant seeking removal of an action from state court bears the burden of establishing grounds for federal jurisdiction, by a preponderance of the evidence. *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106-07 (9th Cir. 2010). The district court must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014); *Bruns v. NCUA*, 122 F.3d 1251, 1257 (9th Cir. 1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not discretionary").[4]

## III. DISCUSSION

### A.   Burrola's Motion for Leave to File a First Amended Complaint

Burrola seeks to make the following changes to his Complaint: (1) add a cause of action for Violation of Labor Code § 2698 *et seq.*, Private Attorneys General Act of 2004 ("PAGA"); and (2) narrow the scope of the claims by dismissing the Twelfth (*Intentional Infliction of Emotional Distress—"IIED"*) and Thirteenth (*Negligent Infliction of Emotional Distress—"NIED"*) Causes of Action. U.S. Security objects to amending the Complaint to add a PAGA claim.

### 1. PAGA Claim

U.S. Security does not argue that Burrola's proposed FAC should be disallowed because Burrola has unduly delayed in seeking amendment or otherwise have acted in bad faith. Rather, U.S. Security argues Burrola's PAGA claim is futile because he was a member of the *Abdullah* class, barring him from prosecuting a PAGA lawsuit premised on the same causes action alleged and settled in a prior class action. (Doc. No. 15 at 6.) The Court disagrees.

---

[4] An order remanding a case based on a lack of subject matter jurisdiction is not appealable. 28 U.S.C. § 1447(d); *Carlsbad Tech, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638-39 (2009).

5

Under PAGA, Lab. Code §§ 2698, et seq., an aggrieved employee, "defined as 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed,' may bring a civil action to collect civil penalties for [California] Labor Code violations previously only available in enforcement actions initiated by the State's labor law enforcement agencies." *Caliber Bodyworks, Inc. v. Superior Court*, 134 Cal. App. 4th 365, 374 (2005). An employee suing under PAGA "does so as [a] proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Court*, 209 P.3d 923, 933 (Cal. 2009). Consequently, PAGA allows an employee to recover "civil penalties on behalf of the state against his or her employer for [California] Labor Code violations." *Iskanian v. CLS Transp. Los Angeles, LLC*, 327 P.3d 129, 133 (Cal. 2014).

Any plaintiff bringing a PAGA action must first exhaust the administrative procedures set forth in Cal. Labor Code § 2699.3. Cal. Labor Code § 2699(a). Among those procedures is the requirement that the aggrieved employee give notice to the Labor and Workforce Development Agency ("LWDA") and the employer of the specific provisions of the labor code alleged to have been violated. *Id.* 2699.3(a). An aggrieved employee may only commence a civil action after he receives notice from the LWDA that it does not intend to investigate the violations, or, if no notice is provided, after 60 days of the postmark date of his notice to the LWDA. *Id.*

PAGA claims are also restricted by a one-year statute of limitations under California Code of Civil Procedure § 340(a). *Thomas v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007). An employee must provide notice to the LWDA and the employer within one year of when the employee ceases working for the employer.[5] Burrola's

---

[5] The "statute of limitations may be tolled up to 60 days (previously 33 days) to account for the period between when LWDA receives a PAGA complaint letter and when it provides notice to the aggrieved employee whether it grants permission for the

6

employment with U.S. Security terminated on June 29, 2017, starting the one-year statute of limitations period. (Doc. No. 8-1 at 2.) The record reflects Burrola timely submitted the required administrative notice to the LWDA and U.S. Security on November 29, 2017, satisfying the administrative requirements. (Doc. No. 8 at 2.)

Instead, U.S. Security argues Burrola's PAGA claim is futile because he was a member of the *Abdullah* class action. (Doc. No. 15 at 6.) To show futility sufficient to defeat amendment under Rule 15, the party opposing amendment must prove that the Court would be required to dismiss the proposed claim *with* prejudice even if amendment were allowed. *See Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir. 1988) (explaining that a proposed amendment is futile and leave should be denied only where the proposed claim is fatally defective as a matter of law); *see also Yucesoy,* 2015 WL 4571547, at *2. U.S. Security has not satisfied that burden.

U.S. Security did offer evidence reflecting the *Abdullah* settlement release period potentially encompassed Burrola's entire employment with U.S. Security, which would cover the entire PAGA claim he is currently proposing. (*See* Doc. No. 15 at 6 [*Abdullah* Final Approval Order at 4-5, Ex. 1 to RJN].) Moreover, it argues Burrola failed to opt out of the *Abdullah* class, binding him to the settlement and final judgment. *Id.*

Burrola contends he never received timely notice of being made a class member because CPT Group (Class Action Administrators) mislabeled the Class Action Settlement form reflecting his address as Unit 1, instead of Unit 10, thereby preventing him from receiving timely notice. (*See* Doc. No. 17 at 7-8.) As a result, Burrola alleges he was surprised to discover on December 7, 2017 "that an 'Order Granting Plaintiffs' motion for final approval of class action settlement, award of attorneys' fees, costs, and enhancements

---

aggrieved employee to initiate a civil action." *Crosby v. Wells Fargo Bank, N.A.*, 42 F. Supp. 3d 1343, 1346 (C.D. Cal. 2014); Cal. Lab. Code §§ 2699.3(a)(2) and (d).

7

1    had been issued in the *Abdullah* case" and that he was a class member. (Decl. of Waldo
2    Burrola, ¶¶ 5-6; Decl. of Eduardo Martorell, ¶ 6)." *Id.*

3        The Court notes that U.S. Security received notice of Burrola's separate claims on
4    November 29, 2017, prior to final approval of the *Abdullah* class settlement. *Id.* Despite
5    the substantial similarities between the two cases, U.S. Security does not appear to have
6    attempted to confirm Burrola received notice or was even aware of the *Abdullah*
7    proceedings. *Id.* Put simply, U.S. Security's actions raise more questions than
8    conclusively demonstrate Burrola does not have a valid claim. Thus, the Court is not
9    convinced at this stage that Burrola will be unable to present evidence of his own sufficient
10   to overcome any Rule 12(b)(1) motion U.S. Security might offer.

11       Therefore, U.S. Security has not *conclusively* demonstrated that Burrola lacks
12   standing to assert a PAGA claim, thereby requiring its futility argument on this basis be
13   **DENIED**.

### 2. Dismissal of Twelfth and Thirteenth Causes of Action

15       While U.S. Security does not object to Burrola's request to dismiss his Twelfth and
16   Thirteenth causes of action, it does object to what it alleges is his intent for doing so - *to*
17   *defeat jurisdiction. See Hill v. Rolleri*, 615 F.2d 886, 889 (9th Cir. 1980). (Doc. No. 15 at
18   1.)

19       Burrola disputes U.S. Security's contention that it makes the request for improper
20   reasons "*to defeat jurisdiction*" arguing U.S. Security's assertion is pure speculation and
21   lacks any merit. (Doc. No. 17 at 1.)

22       Having considered both parties arguments and finding no evidence to support U.S.
23   Security's claim, the Court **GRANTS** Burrola's request to dismiss his Twelfth and
24   Thirteenth Causes of Action.

### 3. Conclusion

26       Accordingly, the Court **GRANTS** Burrola's Motion for Leave to File First Amended
27   Complaint.

28

8

## B.  U.S. Security's Motion to Compel Arbitration

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  When presented with a motion to compel arbitration, the Court is limited to determining (1) whether a valid arbitration agreement exists, and, if so (2) whether the arbitration agreement encompasses the dispute at issue.  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008).  If these conditions are satisfied, the court must compel arbitration.  9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration.").

Here, U.S. Security contends that the Court should compel Burrola to honor his mutual agreement to arbitrate his claims and stay further judicial proceedings pending completion of arbitration. (Doc. No. 3 at 3.) Burrola argues the arbitration agreement fails because: (1) it is invalid due to a lack of mutual assent; (2) he is entitled to recover PAGA penalties; (3) PAGA claims may not be arbitrated[6]; (4) a stay of proceedings is inappropriate; and regardless, (5) it is invalid based on the doctrine of unconscionability. (Doc. No. 9 at 6.) The Court chooses to address the arguments out of the order asserted.

### 1. The Arbitration Agreement is Valid.

U.S. Security presents the Arbitration Agreement, bearing the signature of "Waldo Burrola" as evidence of the parties' agreement to arbitrate.[7] (*See* Doc. No. 3-2 at 11.)

---

[6]  U.S. Security's arbitration agreement contains an illegal waiver of a PAGA claim in violation of *Iskanian v. CLS Transportation*, 59 Cal. 4th 348 (2014) and *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (Sept. 28, 2015).

[7]  U.S. Security submitted a copy of a "Dispute Resolution Agreement," which it represents Burrola executed on November 21, 2016, that included an arbitration agreement. (*See* Doc. No. 3-2 at 3.) The third page of the "Dispute Resolution

9

1 | Burrola does not dispute that he signed the Arbitration Agreement; however, he argues the
2 | arbitration agreement is unenforceable for lack of mutual assent. (*See* Doc. No. 9.)

3 | a.   *Mutual Manifestation of Assent*

4 | Under California law, mutual assent is a required element of contract formation.
5 | *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). It "may be manifested
6 | by written or spoken words, or by conduct, and acceptance of contract terms may be
7 | implied through action or inaction." *Id.* (internal citations omitted). "Thus, an offeree,
8 | knowing that an offer has been made to him but not knowing all of its terms, may be held
9 | to have accepted, by his conduct, whatever terms the offer contains." *Id.* (quoting *Windsor*
10 | *Mills, Inc. v. Collins & Aikman Corp.*, Cal. App. 3d 987, 991 (1972)) (internal quotation
11 | marks omitted). "Courts must determine whether the outward manifestations of consent
12 | would lead a reasonable person to believe the offeree has assented to the agreement." *Id.*
13 | (citing *Meyer v. Benko*, 55 Cal. App. 3d 937, 942-43 (1976)).

14 | Here, Burrola argues there was no mutual assent to the arbitration provision
15 | because it was buried in the Employment Packet and was not distinguished as a separate
16 | contract that called attention to the arbitration provisions. (Doc. No. 9 at 7.) In support,
17 | Burrola cites *Sparks v. Vista del Mar Child & Family Services* where the Court held there
18 | was no mutual assent regarding the arbitration agreement because the agreement to

Agreement" includes the following provision [*see below*] followed by *completed* date and
signature lines for both U.S. Security and Burrola:

"Entire Agreement

....

**PLEASE READ THIS AGREEMENT CAREFULLY. BY SIGNING
IT, YOU ARE AGREEING TO FINAL AND BINDING
ARBITRATION OF ANY AND ALL DISPUTES BETWEEN YOU
AND THE COMPANY INCLUDING WITHOUT LIMITATION,
DISPUTES RELATED TO YOUR EMPLOYMENT WITH THE
COMPANY AND TERMINATION THEREOF, AND ANY CLAIMS
OF DISCRIMINATION AND HARASSMENT."**

*Id.*

10

arbitrate was buried in the handbook and not distinguished from the other provisions."
*Sparks v. Vista del Mar Child & Family Services*, 207 Cal. App. 4th 1511, 1519 (2012).
Moreover, he asserts that he was led to believe that the documents were merely "general
documents" and not something he should "concern" himself with.[8] (Doc. No. 9 at 7.)

U.S. Security responds that Burrola admittedly went through[9] and signed[10] the
Agreement during his hiring. (Doc. No. 11 at 1.) Moreover, U.S. Security contends the
Agreement covers Burrola's claims, was properly formed, agreed to by both parties, and
cannot be held unconscionable as a matter of law under *Armendariz v. Found. Health
Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000). *Id.*

The Court is unpersuaded by Burrola's argument. First, on November 21, 2016,
Burrola signed the Agreement which states: "…By accepting or continuing employment
with the Company, I understand that the Company and I mutually agree to resolve in
binding arbitration any claim that, in the absence of this Agreement, would be resolved in
a court under applicable state or federal law." (Doc. No. 3-2 at 9-11.) The Agreement
was clearly labeled "U.S. Security Associates Dispute Resolution Agreement" across the
top of the page, clearly and unambiguously identifies itself as a contract, and its terms
clearly state a mutual agreement for both Plaintiff and Defendant to arbitrate their
disputes. (Doc. No. 3-3, Ex. 1 to Lopez Decl.) Moreover, U.S. Security requires all new
employees to review and sign the Agreement during the hiring process. *Id.* ¶ 4. The
record reflects that Burrola conceded that at the time of his hiring, he understood one of

---

[8]     "If a party wishes to bind in writing another to an agreement to arbitrate future
disputes, such purpose should be accomplished in a way that each party to the agreement
will fully and clearly comprehend that the agreement to arbitrate exists and binds the
parties thereto." *Knutson*, 771 F.3d 559 at 566.
[9]     "…as I began to go through the packet I realized there were places within the
packet left blank for my signature." (*See* Doc. No. 9-1 [Burrola Decl., ¶ 9] at 1.)
[10]     "I signed all documents within the packet on November 21, 2016." (*See Id.*
[Burrola Decl., ¶ 16] at 1.)

11

the documents he signed *in the packet* was a three-page standalone document titled "Dispute Resolution Agreement." (Doc. No. 9-1, Burrola Decl., ¶¶ 16, 8.) The Court notes that Christine Badua, H.R. Administrator of U.S. Security, also signed the Agreement on behalf of U.S. Security. *Id.* at 11.

The Court further finds *Sparks* distinguishable, rather than comparable to this case. As stated *supra*, Burrola conceded that he was aware one of the documents he *signed* was the Agreement.[11] *Id.* Moreover, as far as the Agreement being "buried," it was one standalone (3-page document) of *only* 12 total documents in the packet, which itself totaled *only* 22 pages. (Doc. No. 3-3, Supp. Lopez Decl., ¶ 4, attached as Ex. 1 to Supp. Boughton Decl.) And again, the Agreement also clearly covers the claims that make up this dispute. (*See* Doc. No. 9-1.) Furthermore, it plainly states that it applies to "…all…employment-related disputes." *Id.*

Accordingly, as both of these threshold questions have been answered in the affirmative, the Court must compel enforcement of the arbitration agreement according to its terms, unless the Agreement may be invalidated according to a traditional contract defense.[12]

## 2. **The Arbitration Agreement Is Not Unconscionable.**

Burrola argues that even if an arbitration agreement exists, it is unenforceable because it is both procedurally and substantively unconscionable. (Doc. No. 9 at 6.)

Under California law, a court may find a contract unenforceable or limit a clause of the contract if it is found to be unconscionable at the time it was made. Cal. Civ. Code § 1670.5(a). "A contract or provision, even if consistent with the reasonable expectations of

---

[11]    "…, the Agreement is merely one of only 12 documents in the new hire packet, which itself totals only 22 pages." (Doc. No. 3-3, Supp. Lopez Decl., ¶ 4, attached as Ex. 1 to Supp. Boughton Decl.)

[12]    The Court finds the "reasonable meaning" of Burrola's signature on the Agreement together with the event's leading to it are manifestations of assent to the terms of the arbitration agreement.

the parties will be denied enforcement if, considered in its context, it is unduly oppressive or unconscionable." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000). A finding of unconscionability requires both a procedural and substantive component, though they "need not be in the same degree." *Id.* at 114.

a.   *Procedural Unconscionability*

Procedural unconscionability concerns the level of oppression and surprise involved in the negotation of the agreement. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). Oppression addresses the relative bargaining power of the parties, while surprise addresses the degree of clarity of the agreement and the expectations of the weaker party. *Id.*

Burrola argues that the agreement is procedurally unconscionable because: (*i*) *Unequal Bargaining Power*, and (*ii*) *Unfair Surprise*. (Doc. No. 9 at 11.) The Court evaluates each argument in turn.

*i. Unequal Bargaining Power.*

Burrola argues that because he was provided with the arbitration agreement on a take-it-or-leave-it basis, he was not afforded the opportunity to negotiate, and that establishes procedural unconscionability. He cites California precedent for the proposition that "oppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 480 (2006). The Court also notes other cases where the Ninth Circuit has found take-it-or-leave-it contracts to be procedurally unconscionable. *See Chavarria*, 733 F.3d at 923 (finding procedural unconscionability where an employee is presented with a contract drafted by an employer as a condition of employment and on a take-it-or-leave-it basis); *see also Tagliabue*, 2015 WL 8780577, at *5 (same).

Here, Burrola is not in a position to change the terms of the arbitration agreement and it is clear that had he not signed the arbitration agreement, then his offer would likely have been rescinded. (*See* Doc. No. 9-1 [Burrola Decl. ¶¶ 7, 12, 15].) The Court finds that

13

this fact indicates some "oppression" was involved in the agreement because Burrola was not in a position to negotiate. Thus, the Court considers the fact Burrola wasn't provided with an opportunity to negotiate the terms of the agreement as an indication of some procedural unconscionability.

### ii. Unfair Surprise.

Burrola contends that the Agreement was "buried" within the fifteen to twenty-page employment packet of documents covering various provision for work, benefit information, and other items. (Doc. No. 9 at 10-11.) By U.S. Security "burying" the Agreement, Burrola contends he was unfairly surprised upon learning he was precluded from bringing suit in this matter. *Id.* at 11.

The Court will briefly examine this issue as it was already addressed *supra*. Here, Burrola was advised of the arbitration clause during his onboarding. Unfair surprise relates to "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Armendariz*, 24 Cal. 4th at 114. The Arbitration Agreement, a three-page document (*see* Doc. No. 3-2 [Exhibit A] at 8-11), provides in pertinent part:

> ....
> By accepting or continuing employment with the Company, I understand that the Company and I mutually agree to resolve in binding arbitration any claim that, in the absence of this Agreement, would be resolved in a court under applicable state of federal law.
> ....
> I entered into this Agreement as a condition of accepting or continuing my employment with the Company.
> ....
> The Company and I agree that this Agreement is governed by the FAA and any arbitration will be administered by JAMS under the rules of JAMS.[13]

---

[13] The Agreement excludes certain claims from arbitration, including worker's compensation and unemployment claims; disputes under a benefit plan where the plan specifies a separate arbitration procedure; claims filed with an administrative agency; and

14

(Doc. No. 3-1 at 5-6.) Moreover, per Rosa Lopez, Human Resources Specialist for U.S. Security, U.S. Security's new hire policies and procedures requires:

> "…that no other person, including any employee, may fill out or sign a newly hired employee's documents or on their behalf. To be sure new employees go over each document, U.S. Security's policy and procedure is to assist any new employee by explaining and translating any documents within the new hire packet as necessary so that he or she fully understands what he or she is receiving, what's in each document, and the impact of signing each document. Employees have the entire orientation to fill out and submit the new hire paperwork. The whole orientation is about one hour to one and a half hours. On the occasions when someone hasn't completed and submitted their new hire paperwork, or had questions, we allowed the newly hired employee to stay over the orientation to have their questions answered and complete the paperwork."

(*See* Doc. No. 11-1 [Ex. 1, Lopez Decl. ¶¶ 1, 5] at 5-6.)

While Burrola was prohibited from taking U.S. Security's new hire documents home to review, he could have requested more time to review them after the orientation had concluded. [14] On November 21, 2016, Burrola did not request more time to review and understand the documents because he wanted to start working without any delay. (*See* Burrola Decl.) Thus, the Burrola was aware the Agreement and signed it absent any unfair surprise.

Accordingly, the Court finds that Burrola was not subjected to any unfair surprise; but the take-it-or-leave-it nature of the agreement establishes some degree of procedural unconscionability. *Nguyen v. Applied Med. Res. Corp.*, 4 Cal. App. 5th 232, 248 (Ct. App. 2016) (finding "some degree" of procedural unconscionability because arbitration

---

claims, which are otherwise expressly prohibited by law from being subject to arbitration. None of these exceptions applies. (Doc. No. 3 at 6, fn *2.)

[14] Burrola contends that he did not understand all the forms he signed during his onboarding. When Burrola asked if he could take the documents home to review, "he was emphatically told 'No!'" (Doc. No. 9 at 2.) .

agreement was presented as an adhension contract). With that in mind, the Court proceeds to consider if the agreement was substantively unconscionable.

b.    _Substantive Unconscionability_

"A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it shocks the conscience." _Chavarria_, 733 F.3d 916 , 922 (9th Cir. 2013).  Burrola argues that the arbitration agreement is substantively unconscionable because it: (_i_) _Prevents an Employees from Recovering Attorneys' Fees_, and (_ii_) _it lacks Modicum of Bilaterality._  (Doc. No. 9 at 11.)

*i. Right to Attorneys' Fees.*

Burrola argues the Agreement  prevents the recovery of attorneys' fees for PAGA representative claims because the Agreement "does not explicitly provide for attorneys' fees, stating that 'the parties shall be responsible for their own attorneys' fees and costs'." (Doc. No. 9 at 12.) U.S. Security disputes this arguing the "Agreement makes explicitly clear that all remedies available in court are also available in arbitration." (_See_ Doc. No. 3-3 [Ex. 1 to Lopez Decl.] at 9.)

The Court finds Burrola's argument unavailing.  While he correctly states the Agreement, _as written_, does not specifically provide for attorneys' fees in arbitration, the law is well settled that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs."  Cal. Labor Code § 2699(g)(1).  Thus, to the extent the prevailing party can recover attorneys in court, they can do so in arbitration. As such, the fact that it is not be explicitly described in the terms of the agreement does not invalidate the Agreement.  Furthermore, the Court notes that the Agreement also provides that U.S. Security will pay "the arbitrator's fees and expenses, any costs of the hearing facility, and any costs of the arbitration service."  (Doc. No. 3-1 at 10.)

In sum, Burrola's claim is a moot issue because the law provides the prevailing party the right to recovery attorneys' fees.

///

16

*ii. Modicum of Bilaterality.*

Burrola next argues the Agreement is not bilateral because there was zero opportunity for him to negotiate the terms of employment under the Agreement. (Doc. No. 9 at 11.) The Court disagrees. In *Armendariz*, the California Supreme Court held that an arbitration agreement was unconscionable if it required the employee to arbitrate his claims but exempted the employer from arbitrating his claims-thus lacking a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 120. The agreement in this case is distinguishable from *Armendariz* because it requires both parties to arbitrate employment disputes and is thus sufficiently bilateral.

Specifically, the Agreement explicitly states: "This Agreement is supported by the parties' mutual promises to submit any claims they may have against the other to final and binding arbitration, rather than to have them decided in court before a judge or jury." (Doc. No. 3-1 at 8.) Moreover, the agreement goes on to define what types of claims would not mutually require arbitration.[15] *See Id.* at 9-10. Thus, the Court finds that the agreement is sufficiently bilateral.

As unconscionability is determined on a sliding scale between procedural and substantive unconscionability, even a strong showing of procedural unconscionability requires at least some substantive unconscionability for the contract term to be invalid. In this case, Burrola is unable to prove the existence of substantive unconscionability and

---

[15]    Claims Not Subject to Arbitration
   "This Agreement does not apply to any claims by me for workers' compensation benefits, unemployment insurance benefits or under a benefit plan where the plan specifies a separate arbitration procedure. The Agreement also does not apply to any claims filed with an administrative agency which are not legally subject to arbitration under this policy, or which are otherwise expressly prohibited by law from being subject to arbitration under this policy. This Agreement also does not preclude either party from applying to a court for a temporary restraining order or preliminary injunction to the extent provided by California Code of Civil Procedure section 1281.8." *The Court notes that none of these exceptions apply to the case at hand.* (Doc. No. 3-1 at 8-11.)

only barely establishes the existence of procedural unconscionability. Therefore he fails to meet his burden of proving the arbitration provision is unconscionable under California law. Because Burrola also falls short of demonstrating the arbitration provision is invalid for lack of mutual assent, the Court finds the Agreement valid and enforceable.

### 3 & 4. Arbitrating PAGA Claims / Waiver or Staying of the Proceedings.

#### i. Arbitrating PAGA Claims.

Burrola contends that the demand to arbitrate his fourteenth cause of action for relief under PAGA is "unenforeable." (*See* Doc. No. 11.) U.S. Security concedes that if a PAGA claim is plead here, it cannot be subject to arbitration, but that does not prevent the arbitrability of Burrola's remaining claims. (Doc. No. 11 at 2.) The Court agrees. *See Jacobson v. Snap-on Tools Co.*, 2015 WL 8293164, at *5 (N.D. Cal. Dec. 9, 2015) (noting that the plaintiff's "non-class, representative claim for civil penalties under PAGA is not subject to arbitration. [The plaintiff's] right to bring representative PAGA claims is not waived by the Agreement or preempted by the FAA."); *see also Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3 d 425 (9th Cir. 2015); *Iskanian v. CLS Transp., L.A., LLC*, 327 P.3d 129 (Cal. 2014). As such, Burrola's PAGA claim is not subject to arbitration.

#### ii. Waiver or Staying of Proceedings.

Burrola argues that it would be inappropriate to stay the PAGA claim pending resolution of his individual claims because no individual claims remain.[16] (Doc. No. 9 at 8.) Moreover, a stay should be denied because it would prolong and harm his ability to recover penalties under PAGA. (Doc. No. 11 at 1.) U.S. Security disputes Burrola's claims asserting that even if the PAGA claim is considered, a stay of the case pending arbitration

---

[16] "Plaintiff has dismissed his individual claims in his First Amended Complaint, leaving nothing but his PAGA claims remaining." (Doc. No. 9 at 9.)

1  is warranted because his PAGA representative claim is entirely derivative of his individual
2  claims.[17]

3        "A party is only entitled to a stay pursuant to section 3 as to arbitrable claims or
4  issues." *Winfrey v. Kmart Corp.*, 692 F. App'x 356, 357 (9th Cir. 2017) (*citing Leyva v.*
5  *Cert. Grocers of Cal., Ltd.* 593 F.2d 857, 863 (9th Cir. 1979). "As to non-arbitrable claims
6  and issues, however, the district court has discretion whether to stay the litigation pending
7  arbitration." *Id.* A trial court may grant a stay "pending resolution of independent
8  proceedings which bear upon the case" where "it is efficient for [the courts] own docket
9  and the fairest course for the parties." *Leyva*, 593 F. 2d at 863.

10        Although a stay is mandatory as to Burrola's arbitrable claims, the Court has the
11  discretion to decide whether to stay the proceedings as to Burrola's non-arbitrable PAGA
12  claim. The Court finds that a stay is proper in these circumstances. First, the factual issues
13  that will be resolved in arbitration clearly "bear upon [the instant] case" because these facts
14  will determine U.S. Security's liability for Burrola's PAGA claim. *See Id.* Thus, it is in
15  the interest of efficiency to grant a stay in order to avoid duplicative proceedings as to the
16  same issues. Second, the Court is not convinced that there are any potential plaintiffs who
17  will be prejudiced by the stay. Although PAGA claims are necessarily representative
18  actions, they are not necessarily class actions. *Arias v. Super. Ct.,* 209 P.3d 923, 930 n.5
19  (2009). Moreover, while Burrola seeks to represent a class of employees who were harmed
20  by U.S. Security's conduct, (*see* FAC ¶ 7) he has not alleged sufficient facts to support his

24  [17]     Burrola already concedes that his proposed PAGA representative claim, even if
25  added, will be entirely derivative of his individual claims. (See Doc. No. 8-1 at 5:3-4
   ["Based upon the same set of facts, the proposed FAC expressly adds [PAGA] to the list
26  of Plaintiff's claims"] [emphasis added]; 6:3-4 ["PAGA representative claims and
   penalties arise from the same general set of facts alleged in Plaintiff's initial complaint,
27  are based entirely on these same facts, and attach because of these same facts"] [emphasis
28  added].)

19

contention that this is a class claim. Rather, the alleged facts and the nature of the claims appear highly individualized. Thus, no unfair prejudice will result from granting the stay.

In light of the foregoing analysis granting U.S. Security's Motion to Compel Arbitration of Burrola's individual claims, the Court **STAYS** the PAGA claim pending completion of the arbitration proceedings.

### 5. <u>Recovery of PAGA Penalties.</u>

Burrola argues that having complied with all of the requirements set forth in Labor Code section 2699.3 to commence a PAGA claim in the FAC, he is entitled to recover PAGA penalties as a matter of right pursuant Labor Code sections 2698 and 2699. (Doc. No. 9 at 8.)

U.S. Security, contends the argument lacks merit as there is yet to be a PAGA claim added to the suit, and in the event one is, it should be stayed pending the outcome of arbitration of Burrola's individual claims as any PAGA claim arises entirely off of the same general set of facts alleged in the initial complaint. (*See* Doc. No. 11 at 2.)

"[A] PAGA action is a statutory action in which the penalties available are measured by the number of Labor Code violations committed by the employer." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015). The employees bringing the action do so as agents or proxies of the state's labor law enforcement agencies. *Id.* PAGA's civil penalties are $100 for each aggrieved employee per pay period for the initial violation and $200 per employee for each subsequent pay period. Cal. Lab. Code § 2699(f)(2). "[C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75% to the Labor and Workforce Development Agency ... and 25% to the aggrieved employees." *Id.* § 2699(i); *see Urbino*, 726 F.3d at 1121. "Any employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g)(1). Any agreement to waive PAGA claims is an agreement to limit the penalties plaintiff-employees may recover on behalf of the state. *Id.* at 436. Because a settlement

of PAGA claims settles claims that could otherwise be brought by the state, the trial court must "review and approve" any settlement of PAGA claims. Cal. Lab. Code § 2699(l)(2).

Having determined the arbitration of the individual claims is appropriate, the Court likewise stays Burrola's claim for civil penalties under PAGA.

### 6. Conclusion

The Court finds that because Burrola agreed to arbitrate his individual claims under the terms of the Agreement, he is required to do so in this matter. Therefore, for the reasons set forth above, the Court **GRANTS IN PART** U.S. Security's Motion to Compel Arbitration. The Court **DENIES** U.S. Security's Motion to Compel Arbitration as to Burrola's PAGA claim, and **STAYS** the PAGA claim pending the outcome of the arbitration proceedings.

### III.  Burrola's Motion for Remand

At the time the case was removed, this Court had federal jurisdiction on the basis of diversity of citizenship. Burrolla has moved to remand arguing that its post-removal amendments dropping the twelfth and thirteenth claims for relief has the effect of reducing the amount in controversy below the $75,000 jurisdictional threshold. However, the propriety of removal is determined solely on the basis of the pleadings filed in the state court at the time of removal. *Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006). Post-removal amendments have no bearing on the propriety of removal. *Id.* Therefore, this Court continues to have federal diversity jurisdiction.

Accordingly, the Court Orders Burrola's Motion to Remand hereby **DENIED as moot**.

### CONCLUSION

In accordance with the conclusions set forth above, the Court **GRANTS** Burrola's Motion for Leave to file First Amended Complaint, **GRANTS in part** U.S. Security's Motion to Compel Arbitration as to Burrola's individual, non-PAGA claims. The Court **DENIES** U.S. Security's Motion to Compel Arbitration as to Burrola's PAGA claim, and

1  **STAYS** the PAGA claim pending the outcome of the arbitration proceedings. The parties

2  are hereby **ORDERED** to file a joint status report every three (3) months from the date of

3  this Order or within ten (10) days of completion of the arbitration proceedings.  The Court

4  **DENIES** Burrola's Motion to Remand.

5      **IT IS SO ORDERED.**

6  Dated: February ⸏ , 2019

         **HON. ROGER T. BENITEZ**
         United States District Judge